IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EARL DEANGELO CHARLES,

    Plaintiff,

v.

C.O. TUCKER, *et al.*,

    Defendants.

Civil Action No.: JRR-21-3204

# MEMORANDUM OPINION

Pending before the court is the Motion to Dismiss, or in the Alternative, for Summary Judgment filed by Defendants Private First Class (Pfc.) Antonio Tucker, Corporal (Cpl.) Charles Penda, Lieutenant Wilbert Rowe, Pfc. Charles Tuckson III, Sergeant Ninoksa Joya, Pfc. Junior Powell, Cpl. Elvis Nji, Cpl. Ivo Eseh, Cpl. Kenneth Sandel, Cpl. Jean Pierre Mbondjo Penda Cravet, and Cpl. Naheshema Jackson-Sutton.[1] ECF No. 16 (hereafter the "Motion"). Defendants seek dismissal or summary judgment in their favor on the claims asserted against them in Plaintiff Earl Deangelo Charles' complaint (ECF No. 1). Mr. Charles responded to the Motion. ECF No. 21. Upon review of the record, a hearing is not necessary. Local Rule 105.6 (D. Md. 2021). For the reasons stated below, Defendants' Motion, shall be GRANTED.

# BACKGROUND

Mr. Charles, a self-represented plaintiff, filed this Complaint on December 17, 2021, while incarcerated at Montgomery County Correctional Facility ("MCCF"). He states that he is entitled to one hour of recreation time out of his cell. On October 30, 2021, he requested his recreation time, but at approximately 5:30 p.m., Cpl. Nji told him he would not get his recreation time that day. ECF No. 1-1 at 1. Mr. Charles requested to speak to a sergeant, but Nji denied his request.

---

[1] The Clerk is respectfully directed to amend the docket to reflect the full and correct names of Defendants.

*Id.* In response, Mr. Charles set off a sprinkler about 30-45 minutes later, spraying dirty water into his cell. *Id.* Rowe, Sandel, and Joya responded and took photos of Mr. Charles' cell but did not make any attempts to assist Mr. Charles with his flooding cell. *Id.* The sprinkler continued for about 10-15 more minutes before officers returned with several sanitation workers and a wet-vac. *Id.* Mr. Charles asserts that they cleaned everywhere but his cell leaving him to stand because everything in his cell was wet. *Id.* Two hours later, Rowe told him to lay down on the ground, but Mr. Charles refused citing the hazardous and cold water covering his cell. *Id.* at 2. Rowe returned with Jackson-Sutton, Tucker, Tuckson, Powell, and Penda; Rowe then sprayed mace through a tube into Mr. Charles' cell. *Id.* Rowe did the same to two other inmates and then returned to spray more mace through the slot of Mr. Charles' cell. *Id.* His eyes and body burned while he struggled to breathe. *Id.* All the officers then left the tier for about ten minutes. *Id.*

    The officers returned in riot gear with shields, masks, and elbow and knee pads. *Id.* Penda ordered Mr. Charles to lay down on the ground in the dirty water. *Id.* at 3. As he began to move to the ground, his cell was opened, and officers threw him to the ground and cuffed his hands and legs. *Id.* Mr. Charles was kicked in the head and lower back, while the officers yelled at him to stop resisting. *Id.* Nearly unconscious, he was lifted to his feet, taken to the recreation area, and strapped to a restraint chair. *Id.* Mr. Charles was left there for over an hour until he was coughing and throwing up blood. *Id.* at 4. A nurse was called who directed officers to take Mr. Charles to the medical department. *Id.*

    Before taking Mr. Charles to medical, Penda stripped him and two other inmates of their clothes. *Id.* Mr. Charles was given a dry jumpsuit and escorted to the medical department in a wheelchair. *Id.* Paramedics were called and Mr. Charles was transported to a hospital where he

2

remained until the following day. *Id.* Since then, he has been housed in the medical department for a broken bone in his face, two black eyes, lower back pain, and bruising. *Id.*

Mr. Charles alleges that Joya, Nji, Eseh, and Mbondjo all witnessed the incident. *Id.* at 5. Mr. Charles seeks monetary relief. ECF No. 8 at 2.

## STANDARDS OF REVIEW

### A. Motion to Dismiss

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. Nov. 29, 2016) (per curiam). However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 622 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167.

**B. Discovery**

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries*, *Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. July 14, 2016) (*per curiam*); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir.

4

2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule

5

56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id*. (internal citations omitted).

According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods*, 302 F.3d at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

C.  **Summary Judgment**

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*,

346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id*. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## DISCUSSION

Defendants raise the affirmative defense that Mr. Charles has failed to exhaust his administrative remedies. If Mr. Charles' claim has not been properly presented through the administrative remedy procedure, it must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e. The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. Appx. 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust

administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). Nevertheless, a claim that has not been exhausted may not be considered by this court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, 578 U.S. 632, 639 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Ross*, 578 U.S. at 639 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford* 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). But the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

The grievance process at MCCF is dictated by the procedure set out in the Montgomery County Department of Corrections and Rehabilitation ("MCDCR") Inmate Guidebook. *See* ECF No. 16-2 (Excerpts from Inmate Guidebook). Detainees can file an Inmate Grievance Form with a correctional officer in their housing unit describing their issue and requesting a remedy within

thirty days after the issue arises; the officer will attempt to resolve the grievance themselves or forward the form to the appropriate personnel for review and return a written response. *Id.* at 18, 19; ECF No. 16-3 at 4, 5 (MCDCR Policy Number 3000-27).  If a detainee disagrees with the decision, it will be forwarded to "the appropriate area or personnel" to attempt to resolve the complaint within five days.  ECF No. 16-2 at 19.  If a detainee disagrees with the second level of review, the grievance can then be reviewed by the appropriate Section Head, then by the Warden, and finally by the Department Director.  *Id.*  At each level of review, five days are allowed for review.  *Id.*  This process is available to a detainee who has a complaint regarding "a policy applicable within the institution, a condition within the institution, an action involving an inmate/resident or a staff member of the institution, or an incident occurring within the institution." ECF No. 16-3 at 1.

In support, Defendants submit the affidavit of Brandon Ward, a MCCF Sergeant and the Accreditation and Compliance Manager, as well as all of the grievances submitted by Mr. Charles between November 2021 and April 2022, when he was released.  ECF No. 16-4 (Brandon Ward Affidavit); ECF No. 16-5 (Charles' Inmate Grievance Forms).  Sgt. Ward attests that the Inmate Grievance Forms attached as Exhibit 4 constitute all of the grievances filed by Mr. Charles while he was detained at MCCF.  ECF No. 16-4 at ¶ 3.  Only three of the numerous grievances filed reference the October 30, 2021 incident.  *See* ECF No. 16-5 at 23, 26, 27.  The first seeks mental health services related to the incident, and the other two request that the facility provide him the names of the officers involved in the incident.  *Id.*

Notably, these grievances were all filed after Mr. Charles instituted this civil action on December 17, 2021.  *See id.*; *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal

Court. . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit."). This court has consistently recognized the principle that exhaustion must be completed prior to filing suit. *See, e.g.*, *Kitchen v. Ickes*, Civil Action No. DKC-14-2022, 2015 WL 4378159, at *8 (D. Md. July 14, 2015); *Miller v. McConneha, et al*, JKB-15-1349, 2015 WL 6727547, at *3-4 (D. Md. Nov. 11, 2015).

Mr. Charles does not generate a dispute of fact in opposition to Defendants' Motion. Thus, it is undisputed that Mr. Charles failed to file a grievance complaining of his alleged mistreatment on October 30, 2021. Further, the loosely related grievances he did file were submitted after initiation of the instant action. As such, Mr. Charles has failed to exhaust his administrative remedies, and Defendants' Motion will be granted.

## Conclusion

By separate Order, the Motion is granted and judgment will be entered in Defendants' favor.

Date: November 8, 2022

/S/
_____
Julie R. Rubin
United States District Judge